No. 13-1799
Combined with 13-1697 and 13-800

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| VLM FOOD TRADING INTERNATIONAL, INC., | ) ) ) ) |
| Plaintiff-Appellee/Cross-Appellant, | ) ) |
| v. | ) ) |
| ILLINOIS TRADING CO., THE OBEE FAMILY PARTNERSHIP, LAWRENCE N. OBERMAN, individually and FJ MANAGEMENT, INC. d/b/a TAB BANK, | ) ) ) ) ) |
| Defendants-Appellants/Cross-Appellees. | ) |

---

**Appeal from the United States District Court for the Northern District of Illinois**
**Case No. 12-CV-8154**
**The Honorable Judge Harry D. Leinenweber**

---

### DEFENDANTS-APPELLANTS/CROSS-APPELLEES
### ILLINOIS TRADING COMPANY, THE OBEE FAMILY PARTNERSHIP, AND
### LAWRENCE N. OBERMAN'S OPENING BRIEF AND SHORT APPENDIX

---

George L. Grumley
Richard C. Carey
GRUMLEY, KAMIN & ROSIC, LLC
Three First National Plaza
70 W. Madison, Suite 2100
Chicago, IL 60602
312-994-9004 (o) * 312-994-0541 (f)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Illinois Trading Company and The Obee Family Partnership are not owned by a

publically traded company nor are they owned by a parent company.

The following attorneys and law firms have appeared for the Illinois Trading Company,

The Obee Family Partnership, and Lawrence N. Oberman:

George L. Grumley -   Partner
Richard C. Carey -      Associate
GRUMLEY, KAMIN & ROSIC, LLC
Three First National Plaza
70 W. Madison, Suite 2100
Chicago, IL 60602


AND

George D. Sax
SCHARF, BANKS & MARMOR, LLC
333 West Wacker Drive
Suite 450
Chicago, IL 60606

# **TABLE OF CONTENTS**

DISCLOSURE STATEMENT...................................................................................... 2

TABLE OF CONTENTS......................................................................................... 3

TABLE OF AUTHORITIES...................................................................................... 4

JURISDICTIONAL STATEMENT.............................................................................. 6

STATEMENT OF THE ISSUES................................................................................ 8

STATEMENT OF THE CASE................................................................................... 9

UNDISPUTED FACTS........................................................................................... 10

SUMMARY OF ARGUMENT.................................................................................. 12

ARGUMENT......................................................................................................... 13

      I. Standard of Review........................................................................... 13

      II. CISG Applies to this Transaction.................................................... 13

      III. Even if the UCC Applied the Attorneys' Fees and Interest Provision are not Enforceable Contract Terms................................................................. 19

      IV. Industry Standards and Course of Dealing Does not Apply to Written Contracts   20

CONCLUSION ...................................................................................................... 21

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7).................................. 22

PROOF OF SERVICE............................................................................................. 23

CIRCUIT RULE 30(d) STATEMENT........................................................................ 24

ATTACHED REQUIRED SHORT APPENDIX............................................................. 25

## <u>TABLE OF POINTS AND AUTHORITIES</u>

<u>PAGE</u>

### Federal Statutes

7 U.S.C. §499a…………………………………………………………………………………….6

7 U.S.C. §499e(c)(5)……………………………………………………………………………….6

28 U.S.C. §1291…………………………………………………………………………………...6

28 U.S.C. §1331…………………………………………………………………………………...6

28 U.S.C. §1332…………………………………………………………………………………...6

### State Statutes

810 ILCS 5/1-303(e)(1)……………………………………………………………………………20

### Cases

*Asante Technologies v. PMC-Sierra*, 164 F.Supp.2d 1142 (N.D. Cal. 2001)…………………...17

*Food Team International Ltd. v. Unilink LLC*, 827 F.Supp.2d 405 (E.D.Pa. 2012)……………16

Foreign Trade Court of Arbitration attached to the Serbian Chamber of Commerce (*Milk Packaging Equipment Case)* July 15, 2008 (retrieved from pace.edu on May 21, 2013)…..........17

*G & G Peppers, LLC v. Ebro Foods, Inc. (in re Ebro Foods, Inc.)*, 424 B.R. 420 (Bankr. N.D. Ill. 2010)…………………………………………………………………………………………..20

*Hanwha Corp. v. Cedar Petrochemicals, Inc.*, 760 F.Supp.2d 426 (S.D.N.Y. 2011)………13, 18

*Miami Valley Paper, LLC v. Lebbing Eng'g & Consulting GMBH*, 2009 U.S. Dist. LEXIS 25201 (S.D. Ohio Mar. 26, 2009)………………………………………………………………….14

*Miller v. Lesea Broadcasting*, 87 F.3d. 224 (7th Cir. 1996)…………………………………..15

*Pelliculest v. Morton International*, Appellate Court Colmar, France (Oct. 24, 2000) (retrieved from pace.edu on May 21, 2013)……………………………………………………………...17

*Rovell v. American Nat'l Bank (In re Rovell)*, 194 F.3d 867 (7th Cir. 1999)……………………13

*Trans-Aire International, Inc. v. Northern Adhesive Co.*, 882 F.2d. 1254 (7th Cir. Ill. 1989)….20

*Travelers Prop. Cas. Co. of Am. v. St.-Gobain Tech. Fabrics Can., Ltd.*, 474 F.Supp.2d 1075 (D. Minn. 2007)………………………………………………………………………………14, 15

*United States v. Brisk*, 171 F.3d 514, 523 (7th Cir. Wis. 1999)…………………………………13

**Other Authorities**

CISG Art. 1(a)…………………………………………………………………………………13

CISG Art. 10……………………………………………………………………………………14

CISG Art. 18(a)……………………………………………………………………………15, 18

CISG Art. 18(2)…………………………………………………………………………………18

CISG Art. 18(3)…………………………………………………………………………………18

CISG Art. 19……………………………………………………………………………………14

CISG Art. 19(a)…………………………………………………………………………………19

CISG Art. 19(2)…………………………………………………………………………………19

CISG Art. 19(3)…………………………………………………………………………………19

CISG Art. 33……………………………………………………………………………………20

Fed. R. App. P. 4(a)(3)…………………………………………………………………………6

## JURISDICTIONAL STATEMENT

### A. District Court Jurisdiction

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 7 U.S.C. §499e(c)(5) in that this action arose out of the laws of the United States, specifically, the Perishable Agricultural Commodities Act, 7 U.S.C. §§499a (et seq).

The District Court also had jurisdiction over this matter pursuant to 28 U.S.C. 1332 in that the Plaintiff is a foreign corporation, the Defendants are residences of different states and the amount in controversy exceeds $75,000. The Plaintiff, VLM Food Trading International, Inc. (hereinafter "VLM") is an entity incorporated under the laws of the country of Canada with its principle place of business in Quebec, Canada. Defendants Illinois Trading Company and The Obee Family Partnership exist under the laws of the State of Illinois. Defendant Lawrence Oberman is a resident of the State of Illinois. Defendant FJ Management d/b/a/ TAB Bank is, on information and belief, a resident of the State of Utah.

### B. Appellate Court Jurisdiction

This Honorable Court has jurisdiction of this matter pursuant to 28 U.S.C. §1291. The District Court entered final judgment on March 5, 2013. On March 8, 2013 the Plaintiff, VLM filed a Motion to Alter or Amend the Judgment. On March 14, 2013 the District Court denied the Motion to Alter or Amend the Judgment. VLM timely filed their Notice of Appeal on April 3, 2013. The Defendants timely filed their Notices of Cross-Appeal on April 15, 2013 pursuant to Federal Rule of Appellate Procedure 4(a)(3).

The March 5 and March 14th 2013 orders disposed of the great majority of the Parties'
claims. Still pending at the time of this filing is the issue of the amount of attorneys' fees which
may be awarded to VLM.

## ISSUES PRESENTED FOR REVIEW

A.  Whether or not the District Court erred in not applying the United Nations Convention on Contracts for the International Sale of Goods to the transactions at issue herein, and therefore, in awarding attorneys' fees to the Plaintiff.

B.  Whether or not, even in the absence of the Convention applying, the awarding of attorneys' fees was proper.

## STATEMENT OF THE CASE

Illinois Trading Company (collectively with the other Defendants save TAB Bank, hereinafter the "ITC Defendants") purchased thousands of pounds of frozen produce, specifically potatoes, from VLM. Illinois Trading Co. was in the business of purchasing wholesale amounts of produce from domestic and international suppliers at which point they would resell the produce to other distributors or retailers. It is undisputed that Illinois Trading Co. purchased from the Plaintiff, VLM and did not pay all of the charges therefor. What is at issue is whether or not the invoices issued by VLM at the same time or after delivery of the goods and which contained language obligating the ITC Defendants to pay interest and attorneys' fees, is enforceable. That language was neither part of the Defendants' purchase order (the offer) nor part of the Plaintiff's confirmation of that order (the acceptance). Under both the United Nations Convention on Contracts for the International Sale of Goods (hereinafter "CISG") and the Uniform Commercial Code the attorney fee provision is unenforceable. For the reasons below, based on the undisputed facts introduced at trial, it is clear that the ITC Defendants are not liable for the attorneys' fees and interest claimed by VLM. The District Court's holding to the contrary must be reversed and this Honorable Court must modify the judgment on appeal to remove any attorney fee award.

## UNDISPUTED FACTS

- VLM sold to ITC frozen produce. The outstanding principal balance of the invoices outstanding is $184, 978.00. ITC does not dispute the invoice balances. (Answer to Amended Complaint, DKT #:58, Record on Appeal Volume 2, pg 97, Plaintiff's Trial Exhibit 1)

- The principal office of VLM is located in Quebec, Canada. (Testimony of Witold Filemonowicz pg 82[1], Amended Complaint DKT #: 22, Record on Appeal Volume 1, pg 178)

- The principal office of ITC is in Illinois, United States of America (Amended Complaint, DKT #: 22, Record on Appeal Volume 1, pg 178)

- There existed at the time of the transactions at issue a treaty in force in the United States named the United Nations Convention on Contracts for the International Sale of Goods (15 U.S.C. Appendix, 52 Fed. Reg. 6262, 6264-6289 (March 2, 1987))

- Lawrence Oberman, President of Illinois Trading Company, never personally assented to or even saw the invoices at issue in this case. (Testimony of Lawrence Oberman, pg 134)

- Sweta Patel, the bookkeeper of Illinois Trading Co., received the invoices at issue herein over one week after the delivery of the goods. (Testimony of Sweta Patel, pg 128-129)

- The first and only time the attorneys' fee and interest provision at issue in this case ever appeared on the documents exchanged between the parties was on the final invoice issued by VLM which were sent to the ITC Defendants after the exchange of purchase orders, order confirmations, delivery confirmations, and the delivery of the purchased produce.

---

[1] All references to the testimony of witnesses are from the Trial on the Merits, February 19, 2013

(Testimony of Witold Filemonowicz pg 70, Testimony of Sweta Patel pg 128-129, ITC

Trial Exhibits B and C)

## SUMMARY OF ARGUMENT

The Plaintiff, VLM, is not entitled to its attorneys' fees and costs in this Perishable Agricultural Commodities Act case for several reasons. First, the CISG applies to the transaction at issue and, therefore, the attorneys' fee clause on the final invoice sent by VLM to ITC is not an enforceable contract term but instead a counter-offer. Second, assuming that the CISG did not apply, the Uniform Commercial Code would not allow the attorney fee provision to stand either because there existed an express, written contract between the parties prior to the disputed provision appearing anywhere in the course of the parties' dealings. For these reasons the judgment of the District Court which awarded attorneys' fees to the Plaintiff must be reversed.

## ARGUMENT

### I.  Standard of Review

There exist only questions of law in this appeal as the facts were undisputed at trial.

Therefore, the standard of review in this Court is *de novo*. *United States v. Brisk*, 171 F.3d 514,

523 (7th Cir. Wis. 1999)(reviewing *de novo* the discriminatory nature of removing certain jurors

where the makeup of the jury pool was undisputed). See also *Rovell v. American Nat'l Bank (In*

*re Rovell)*, 194 F.3d 867 (7th Cir. Ill. 1999)(stating "[a]n appellate court will overturn a lower

court's findings of fact only where clearly erroneous, and conversely, it will apply less

deferential de novo review to questions of law.")

### II.  CISG Applies to this Transaction

#### A.  Legal Basis for CISG

There exists a treaty in force named the CISG. If the parties do not wish CISG to apply then

they must affirmatively opt out. "The intent to opt out of the CISG must be set forth in the

contract clearly and unequivocally." *Hanwha Corp. v. Cedar Petrochemicals, Inc*., 760 F. Supp.

2d 426, 430 (S.D.N.Y. 2011). CISG applies to contracts of sale of goods between parties whose

places of business are in different states when the states are "contracting states." CISG Art. 1(a).

The United States and Canada are "contracting states."[2] For the purposes of CISG, if a party has

more than one place of business, the place of business is that which has the closest relationship to

the contract and its performance, having regard to the circumstances known to or contemplated

by the parties at any time before the conclusion of the contract. CISG Art. 10. Under CISG,

when dealing with what in American jurisprudence is defined as the "battle of the forms" Article

19 of CISG applies. Article 19 states in its entirety:

---

[2] http://treaties.un.org/pages/ViewDetails.aspx?src=TREATY&mtdsg_no=X-10&chapter=10&lang=en (visited on
May 28, 2013)

(1) A reply to an offer which purports to be an acceptance but contains additions, limitations or other modifications is a rejection of the offer and constitutes a counter-offer.

(2) However, a reply to an offer which purports to be an acceptance but contains additional or different terms which do not materially alter the terms of the offer constitutes an acceptance, unless the offeror, without undue delay, objects orally to the discrepancy or dispatches a notice to that effect. If he does not so object, the terms of the contract are the terms of the offer with the modifications contained in the acceptance.

(3) Additional or different terms relating, among other things, to the price, payment, quality and  quantity of the goods, place and time of delivery, extent of one party's liability to the other or the settlement of disputes are considered to alter the terms of the offer materially.

Courts have further stated, as it relates to Article 19, that "There are several critical differences between the law governing contract formation under the CISG and the more familiar principles of the Uniform Commercial Code. First, the CISG applies the common law concept of mirror image…" *Miami Valley Paper, LLC v. Lebbing Eng'g & Consulting GMBH*, 2009 U.S. Dist. LEXIS 25201 (S.D. Ohio Mar. 26, 2009).  Also see *Travelers Prop. Cas. Co. of Am. v. St.-Gobain Tech. Fabrics Can., Ltd.*, 474 F. Supp. 2d 1075, 1082 (D. Minn. 2007)(stating that Article 19 embodies a mirror image rule). The mirror image rule is described as a general principle of contract law where an acceptance, in order to be effective, must exactly match the terms of an offer. See for e.g. *Miller v. Lesea Broadcasting*, 87 F.3d 224, 227 (7th Cir.1996)(Posner, J.)

Lastly, concerning when acceptance of an offer is effective, under CISG, "A statement made by or other conduct of the offeree indicating assent to an offer is an acceptance. Silence or inactivity does not in itself amount to acceptance" CISG Art. 18(a).

**B.  The United Nations Convention on Contracts for the International Sale of Goods Applies**

First, it must be established that CISG controls the transaction at issue here and not, for example, Illinois' version of the Uniform Commercial Code.  It is undisputed that ITC is located in Illinois, United States of America. Testimony was introduced by Witold Filemonowicz which indicated that VLM had an office in the United States. However, as stated by Mr. Filemonowicz, the communication concerning the transaction at issue herein was done out of the Montreal office. The invoices were sent by the Montreal office, payment was received by the Montreal office, and the invoices at issue bear the address of the Montreal office. The negotiations for the purchase of the goods at issue took place out of Montreal by an employee employed in Montreal. The entirety of Mr. Filemonowicz testimony on this subject was as follows (pg 82):

> Q. All right. Now, you testified that the salesman from VLM who sold to Illinois Trading, what was his name?
> A. Mr. Preston, Jeff Preston.
> Q. Okay. Where did Mr. Preston work?
> A. At that time?
> Q. Yes.
> A. At VLM Food.
> Q. At VLM in what office?
> A. At our head office in Montreal.
> Q. In Montreal, okay.
> A. Or in Kirkland, which is a suburb of Montreal.
> Q. All right. So the address on the bottom of that in Kirkland, Quebec, Canada, that's correct? That was the address where he was working at?
> A. Yes, that's correct.
> Q. And all communications between VLM and Illinois Trading took place in that office in Quebec, is that correct?
> A. That's our head office. That's correct.

Q. Now, when payment was received by VLM for the previous sales to Illinois Trading, were those also paid to the Quebec office?
A. Yes. That's where all our banking is done. That's our head office, so obviously, yes.

Based upon this overwhelming, uncontested, evidence there can be no other conclusion that under Art. 10 of CISG the Montreal office was the office with the closest connection the contract.

The District Court (Leinenweber, J.) erroneously applied the facts and holding from *Food Team International Ltd. v. Unilink, LLC*, 872 F.Supp.2d 405 (E.D.Pa. 2012). In *Food Team* the parties were both located in the United States and both had their principle places of business in the United States. However the goods at issue in *Food Team* were shipped from Hong Kong and part of the contract was negotiated in Hong Kong. Here, the facts are opposite. The principle place of business of ITC is uncontrovertibly Illinois. The principle place of business of VLM is Montreal. Further, the negotiations concerning the transaction at issue herein occurred between a Montreal office and an Illinois office. The invoices were sent from Montreal and payment was received in Montreal. There is no fact in the record to demonstrate that the letterbox office of VLM in New Jersey had a stronger, or really any, connection to the transaction. It appears that the letterbox office at VLM's distributor, that VLM listed for the its PACA license, existed only for the purpose of maintain a PACA license. ITC takes no position on the validity of VLM's PACA license except to say that VLM's New Jersey location was simply for administrative purposes and had nothing to do with this transaction.

This case is more akin to *Asante Technologies v. PMC-Sierra*, 164 F. Supp.2d 1142 (N.D. Cal. 2001). In *Asante* the plaintiff and defendant were both Delaware incorporated entities. The plaintiff had its principle place of business in California and the defendant had its principle

place of business in British Columbia, Canada as well as an office in Portland, Oregon. The court held that CISG applied because the defendant's place of business was Canada. The court found that during the relevant time period the corporate headquarters, public relations department, warehouse, design, and engineering functions were in Canada. Here, VLM maintains its corporate headquarters, finance operations, and other functions in Montreal. There is nothing in the record which shows that the New Jersey location of VLM had anything to do with the transaction at issue.

International cases also bear out that CISG should be the governing law.[3] In *Pelliculest v. Morton International*, Appellate Court Colmar, France (Oct. 24, 2000)[4] the court found that the office with the closest relation to a contract was the office where the order confirmations emanated, the invoices were sent, and the delivery of goods occurred. Just as VLM issued invoices from its Montreal Office and received payment at its Montreal office so did the defendant in the *Pelliculest* case. Other international cases further support the application of CISG. In *Milk Packaging Equipment Case*, July 15, 2008, (Serbia Foreign Trade Court of Arbitration attached to the Serbian Chamber of Commerce)[5] the arbitrator found that CISG applied because the delivery and receipt of payment occurred in the Swiss office of the defendant, not the Serbian one. The facts are the same here, invoices were sent and payment received in Montreal, not New Jersey.

Lastly, as stated in *Hanwha Corp*, supra, if a party wishes to opt-out of CISG they must do so unequivocally. Here, it is undisputed that none of the documents contain any other choice of law provision which would remove CISG as the applicable law.

---

[3] Article 7(1) of CISG commands that Courts interpreting CISG should do so uniformly.
[4] http://cisgw3.law.pace.edu/cases/001024f1.html (visited on May 28, 2013)
[5] http://cisgw3.law.pace.edu/cases/080715sb.html (visited on May 28, 2013)

### C. Under CISG, VLM's Invoices were Counter-Offers or Proposals for Additional Terms and Therefore Not Part of the Contract

#### 1. There was Already an Express Contract Between the Parties and the Invoices Sent by VLM were Not Part of the Express Contract

Under CISG, the invoices sent by VLM constitute, at best, a counter-offer and therefore are not enforceable as a part of the contract between the parties. It is undisputed that VLM's invoices contained additional terms not contained on the purchase orders (offers) sent by ITC nor on VLM's confirmation (acceptances) of those purchase orders (ITC Trial Exhibits B and C). It is undisputed that VLM accepted the purchase orders either by sending to ITC a confirmation of the purchase order (ITC Exhibit C) or, physically putting the produce purchased by ITC on a ship bound for the United States of America. Under Article 18 of CISG, the contract was accepted and the terms fixed either: a) at the time of the receipt of the confirmation sent by VLM (CISG Art. 18(2)) or; b) when VLM loaded the goods onto the carrier (CISG Art. 18(3) (stating that acceptance can be manifest by the performing of an act such as dispatching the goods). At the time of the receipt of either the confirmations or the shipment of the goods, the express written contract between VLM and ITC was solidified. Since the contract was then complete there is no need for the invoices to act as acceptance or a counter-offer for additional terms. The invoices simply are not part of the express contract between the parties. Under Article 18(a) a contract cannot be accepted by silence and it is undisputed that ITC never specifically assented to the extra terms in VLM's invoice (Testimony of Oberman pg 134 and Patel pg 128-129). The only possible way that CISG would allow the extra attorneys' fee and interest terms at issue herein to be included in the contract between VLM and ITC would be through CISG Article 19 which, as seen below, is not possible.

**2.      The Invoices Attempted to Add Material Terms to the Contract that are not Enforceable**

Article 19 of CISG, as quoted *supra*, does not allow a reply to an offer which contains any additions, limitations, or other modifications to act as an acceptance of that offer. The reply, instead, is a counter-offer (CISG Art. 19(a)). Here, the invoice sent by VLM - which was after the goods were delivered and after an order confirmation was received by ITC – at best could be considered a counter-offer that contained additional terms which modified the offer of ITC which was contained on ITC's purchase order (ITC Exhibit B). While non-material terms can be included in the contract between the parties under CISG Art. 19(2) when they are not objected to (as the case here), material terms cannot be included under CISG Art. 19(3). Under CISG Art. 19(3) any term which relates to, *inter alia*, the extent of one party's liability to the other is always a material term. Therefore, the extra term dealing with the liability of ITC for VLM's attorneys' fees and interest cannot be said to be included in the contract between the parties. The parties already had a valid, express contract by virtue of the purchase orders and confirmations. The additional terms proposed by VLM are, at best, a counter-offer or proposal for additional terms but they are most certainly not part of the express contract between the parties.

**III.    Even if the UCC Applied the Attorneys' Fees and Interest Provision are not Enforceable Contract Terms**

The ITC Defendants' position is further strengthened by the case law not applying CISG but by applying general aspects of contract law. The case at bar bears a remarkable resemblance to the recent case of *G & G Peppers, LLC v. Ebro Foods, Inc. (In re Ebro Foods, Inc.)*, 424 B.R. 420 (Bankr. N.D. Ill. 2010)(subsequently overturned on other grounds). Just like the case before the Court, in *Ebro Foods* the plaintiff shipped perishable agricultural goods to a buyer after

receiving a purchase order. The defendant then, after delivery of the goods, sent an invoice which contained language adding interest and attorneys' fees to the contract. The purchase orders, as here, did not contain any language regarding interest or attorneys' fees. As the court in *Ebro Foods* states: "Here, however, G&G signed the purchase orders, and there was thus no need for the invoices to act as acceptances, and so there is no need to impute additional terms into the parties' already enforceable written contract" *Id* at 425. Here, VLM did not sign the purchase orders but they did send written confirmations back to ITC. Therefore, as in *Ebro Foods*, there was already a written contract between the parties and no need or ability to read additional unilateral terms added by VLM into the contract. Lastly, the *Ebro Foods* court further stated "a party charged with legal duties and obligations cannot reasonably rely upon a boilerplate clause in a boilerplate form and a corresponding operation of law to shift substantial economic burdens from itself to a nonassenting party." (quoting *Trans-Aire International, Inc. v. Northern Adhesive Co.*, 882 F.2d 1254, 1260 (7th Cir. Ill. 1989)(internal quotation marks omitted).

## IV.    Industry Standards and Course of Dealing does not Apply to Written Contracts

Lastly, VLM introduced testimony that industry practices or course of dealings may imply the attorneys' fee and interest provisions into the written contract between the parties. This is not the case. Under CISG and the UCC, written terms take precedence over the course of dealings or industry practices. See for e.g. CISG Art. 33 (declaring the written contract to be controlling over industry practices for the delivery of goods); 810 ILCS 5/1-303(e)(1) (stating that express terms prevail over course of performance, course of dealing, and usage of trade). Here, there was a complete, express, written contract between the parties as defined by both CISG and the UCC when VLM sent their confirmations (ITC Exhibit C) in response to ITC's purchase orders (ITC Exhibit B). Because the written contract prevails over any assumed or

implied provisions under both CISG and the UCC, there is no place for implied terms, especially terms which dramatically shift the liabilities of the parties and could lead to a 33% increase in ITC's liability to VLM.

## V.    Conclusion and Prayer for Relief

For the reasons stated above, VLM is not entitled to their attorneys' fees in this matter. International law, the UCC, and general contract principles clearly do not allow VLM to recover their collection costs in this case.

WHEREFORE, Illinois Trading Company, The Obee Family Partnership, and Lawrence N. Oberman pray this Honorable Court to reverse that portion of the District Court's Order of March 5, 2013 which awarded the Plaintiff attorneys' fees, interest, and costs.

Respectfully Submitted,
FOR ILLINOIS TRADING CO.,
OBEE FAMILY PARTNERSHIP, and
LAWRENCE OBERMAN

By:____/s/ George L. Grumley_____

George L. Grumley
Richard C. Carey
GRUMLEY, KAMIN & ROSIC, LLC
Three First National Plaza
70 W. Madison, Suite 2100
Chicago, IL 60602
312-994-9004 (o) * 312-994-0541 (f)

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)

The undersigned, counsel of record for the Defendants-Appellee/Cross-Appellants, Illinois Trading Company, The Obee Family Partnership, and Lawrence N. Oberman furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is under 30 pages.


Dated: May 28, 2013


By: ___/s/ George L. Grumley_____

George L. Grumley
Richard C. Carey
GRUMLEY, KAMIN & ROSIC, LLC
Three First National Plaza
70 W. Madison, Suite 2100
Chicago, IL 60602
312-994-9004 (o) * 312-994-0541 (f)

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned attorney, counsel for Illinois Trading Company, The Obee Family

Partnership and Lawrence N. Oberman, certify that I sent copies of this Brief to the parties listed

below via the Court's ECF system as well as first class mail, postage pre-paid.


Dated: May 28, 2013

Larry Meurs
MUERS LAW FIRM, P.L.
5395 Park Central Court
Naples, FL 34109

Michael Keaton
KEATON LAW FIRM, P.C.
707 Lake Cook Road, Suite 903
Deerfield, IL 60015


By: _____/s/ George L. Grumley
GRUMLEY, KAMIN & ROSIC, LLC
Three First National Plaza
70 W. Madison, Suite 2100
Chicago, IL 60602
312-994-9004 (o) * 312-994-0541 (f)

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule

30(a) and 30(b) are included in the appendix.

By:    /s/ George L. Grumley
GRUMLEY, KAMIN & ROSIC, LLC
Three First National Plaza
70 W. Madison, Suite 2100
Chicago, IL 60602
312-994-9004 (o) * 312-994-0541 (f)

No. 13-1799
Combined with 13-1697 and 13-800

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

| | |
|---|---|
| VLM FOOD TRADING INTERNATIONAL, INC., | ) |
| | ) |
| | ) |
| Plaintiff-Appellee/Cross-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| ILLINOIS TRADING CO., THE OBEE FAMILY PARTNERSHIP, LAWRENCE N. OBERMAN, individually and FJ MANAGEMENT, INC. d/b/a TAB BANK, | ) |
| | ) |
| Defendants-Appellants/Cross-Appellees. | ) |

---

**Appeal from the United States District Court for the Northern District of Illinois
Case No. 12-CV-8154
The Honorable Judge Harry D. Leinenweber**

---

**DEFENDANTS-APPELLANTS/CROSS-APPELLEES
ILLINOIS TRADING COMPANY, THE OBEE FAMILY PARTNERSHIP, AND
LAWRENCE N. OBERMAN'S SHORT APPENDIX**

---

George L. Grumley
Richard C. Carey
GRUMLEY, KAMIN & ROSIC, LLC
Three First National Plaza
70 W. Madison, Suite 2100
Chicago, IL 60602
312-994-9004 (o) * 312-994-0541 (f)

# <u>TABLE OF CONTENTS</u>

District Court Memorandum Opinion and Order, March 5, 2013

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 8154 | **DATE** | 3/5/2013 |
| **CASE TITLE** | VLM Food Trading International, Inc. vs. Illinois Trading Co., *et al.* | | |

**DOCKET ENTRY TEXT**

ENTER MEMORANDUM OPINION AND ORDER: The Court finds for VLM on Counts I-IV of the Complaint, and awards VLM the sum of $200,672.88 plus attorneys' fees and any other interest which has accrued since February 19, 2013. The Court finds in favor of TAB Bank with respect to Count V. The Court directs VLM to submit its fee petition by April 1, 2013. Defendants are permitted until April 29, 2013 to file a response challenging the reasonableness of VLM's fees. If VLM chooses, it will have until May 6, 2013 to file a reply.

■ [ For further detail see separate order(s).]

Docketing to mail notices.
Mailed AO 450 form.

| | Courtroom Deputy Initials: | WAP |
|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VLM FOOD TRADING INTERNATIONAL,
INC.,

                Plaintiff,

      v.

ILLINOIS TRADING CO., *et al.*,

                Defendants.

Case No. 12 C 8154

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court for decision are the merits hearing record and post-hearing briefing of Plaintiff VLM Food Trading, International, Inc. and Defendants Illinois Trading Company, Lawrence Oberman, Obee Family Partnership, and FJ Management (d/b/a TAB Bank).

For the reasons stated herein, the Court finds in favor of Plaintiff VLM Food Trading International, Inc. on Counts I-IV and awards the Summ of $200,672.88 plus attorneys' fees. The Court finds against VLM with respect to Count V. The Court enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).

### I.  BACKGROUND

Plaintiff, VLM Food Trading International, Inc. ("VLM") is a seller of wholesale quantities of produce. Defendant Illinois Trading Company ("ITC") is a business that purchases wholesale

amounts of produce from suppliers and resells such produce to other distributors or retailers. Defendant Lawrence N. Oberman ("Oberman") was the President of ITC at all relevant times. It is undisputed that ITC ordered thousands of pounds of frozen potatoes from VLM for which it failed to pay.

The sale of frozen potatoes and other perishable goods is regulated by the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* (the "PACA"). PACA was enacted originally to protect produce sellers during the Great Depression by "suppress[ing] unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce." 49 Fed. Reg. 45737. Accordingly, it requires produce dealers to make "full payment promptly" for any produce they purchase. 7 U.S.C. § 499(b)(4).

Under certain circumstances, PACA allows produce sellers to establish a constructive, non-segregated "floating" trust over funds owed for sales on short-term credit and to recover against a responsible shareholder of the debtor company.

On October 10, 2012, VLM filed suit against ITC, Oberman, and The Obee Family Partnership (an Illinois entity which was in a position to control ITC). In its initial Complaint, VLM alleged two claims under PACA, and state law claims for breach of contract and breach of fiduciary duty. ECF No. 1.

- 2 -

On October 11, 2012, VLM filed a Motion for a Temporary
Restraining Order (the "TRO") seeking to prevent ITC, Oberman and
the Obee Family Partnership from dissipating the assets held in
their PACA trust.  After a brief hearing, the Court granted VLM's
TRO and required Defendants to deposit $197,387.78 in the Court's
Registry.  ECF No. 11.  Five (5) days after the TRO was entered,
ITC filed a Motion to Vacate the TRO.  The Court disagreed with the
arguments set forth in Defendants' Motion, but continued the Motion
until the Preliminary Injunction Hearing set for November 6, 2012.

On October 22, 2012, VLM filed an Amended Complaint, adding
Defendant FJ Management (d/b/a TAB Bank), and adding a count
against all Defendants (including TAB Bank) for unlawful retention
and conversion of PACA trust assets.  In the Amended Complaint, VLM
contends that TAB Bank and Defendants entered into a security
agreement where TAB Bank would lend funds to Defendants in exchange
for a security interest in all of ITC's assets, including ITC's
inventory and accounts receivable.  VLM alleges that Defendants
defaulted on this security agreement in approximately September
2012.  When this occurred, TAB Bank exercised its rights as a
secured creditor and took possession of Defendants' PACA trust
assets – namely, $445,000 of proceeds from ITC's deposits and
$260,000 of ITC's inventory.  VLM claims that TAB Bank knew or
should have known that these assets were generated through the sale
of produce and were part of a PACA trust.  Based on these facts,

- 3 -

VLM alleges that TAB Bank has unlawfully retained and converted funds from ITC's PACA trust.  In its Answer to VLM's Amended Complaint, TAB Bank admitted that it had an agreement with ITC, but denied the remainder of VLM's allegations.  *See* ECF No. 40 at 13-17.

On November 6, 2012, Defendants represented that the parties were engaging in settlement discussions.  Because of this, Defendants requested the Court continue the preliminary injunction hearing.  The Court agreed to do so and postponed the hearing until November 26, 2012.

However, on November 19, 2012, counsel for Defendants ITC, Oberman, and Obee Family Partnership (hereinafter "the ITC Defendants") filed a Motion to Withdraw citing irreconcilable differences.  The Court granted counsel's Motion, extended the TRO, continued the hearing until January 15, 2013 and gave the ITC Defendants until December 18, 2012 to obtain new counsel.  *See* ECF No. 41.

On January 9, 2013, after the ITC Defendants failed to obtain new counsel and answer VLM's Complaint, VLM moved for default judgment.  On January 15, 2013, Defendants appeared in Court without counsel still having not answered VLM's Complaint.  In light of these facts, the Court granted VLM's Motion for Default, consolidated the preliminary injunction hearing to a merits hearing, and set the hearing for February 19, 2012.

- 4 -

On February 5, 2013, Defendants obtained new counsel and moved to vacate the entry of default judgment. The Court granted this motion only as to Oberman personally.

On February 14, 2013, the ITC Defendants answered VLM's Complaint. Shortly thereafter, VLM moved for judgment as a matter of law and TAB Bank moved to continue the hearing set for February 19, 2013.

On February 19, 2013, this Court denied VLM's Motion for Judgment as a Matter of Law because an issue remained with respect to whether the ITC Defendants were required to pay attorneys' fees and interest. The Court denied TAB Bank's Motion for a Continuance and proceeded to hear testimony.

## II.  **DISCUSSION**

PACA provides that perishable agricultural commodities received by a licensed dealer, as well as the proceeds from sales of those commodities, are held in trust for the benefit of unpaid suppliers until full payment has been made. 7 U.S.C. § 499e(c)(2). This trust is automatically created when the dealer accepts the goods so long as the supplier adheres to the notice requirements set forth in 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46(f). *Greg Orchards & Produce, Inc. v. Roncone,* 180 F.3d 888, 890-91 (7th Cir. 1999). PACA trust rights "take priority over the interests of all other creditors, including secured creditors." *Patterson Frozen*

- 5 -

*Foods, Inc. v. Crown Foods Intern., Inc.*, 307 F.3d 666, 669 (7th Cir. 2002).

PACA trust rights can be enforced through a court action for breach of fiduciary trust.  7 U.S.C. § 499e(c)(5).  Such an action permits recovery against "both the corporation and its controlling officers."  *Id.*  In exchange for these protections, PACA establishes strict eligibility requirements.

The ITC Defendants admit that they are "brokers" under PACA. *See* Defs.' Answer to Pl.'s First Amend. Compl. at 2.  VLM presented its PACA license and provided testimony that it has had a valid PACA license since July 13, 2001.  *See* ECF No. 54-1; *See* Ct. Tr. 2/19/13 at 64.  The ITC Defendants' admitted that they owe VLM for the unpaid invoices.  Thus, the Court finds VLM has established that the ITC Defendants are liable for at least $184,987.00 (the principal amount of the unpaid invoices).  The remaining issues before the Court are whether the ITC Defendants are liable for attorneys' fees and interest and whether Defendant Oberman is personally liable for the debt.

### A.  Attorneys' Fees

VLM contends it is entitled to attorneys' fees because the invoices it sent to ITC included a provision that obligated ITC to pay such fees and to pay interest.  In relevant part, the provision states:

> The perishable agricultural commodities listed
> on this invoice are sold subject to the

> statutory trust authorized by section 5c of
> the Perishable Agricultural Commodities Act,
> 1930 (7 U.S.C. § 499e(c)).  The seller of
> these commodities retains a trust claim over
> these commodities until full payment is
> received.  Interest shall accrue on any past-
> due account balance at the rate of 1.5% per
> month (18% per annum).  Buyer agrees to pay
> all costs of collection, including attorney's
> fees.

Pl.'s Ex. B; ECF No. 1-1, Page ID # 10.

The ITC Defendants claim that this provision is not enforceable because (1) the United Nations Convention on Contracts for the International Sales of Goods controls the transactions at issue; and (2) even if the Uniform Commercial Code governs the dispute, VLM's invoices were counteroffers or proposals for additional terms and were not part of the contract that existed between the parties.

## 1.  *Findings of Fact*

ITC and VLM engaged in transactions beginning in at least June 2012.  In these transactions, VLM delivered produce (namely, frozen potatoes) to ITC.  The sequence of the parties' transactions were as follows.  First, ITC would submit a Purchase Order to VLM which described the item it sought to purchase, the quantity it needed, the rate it was willing to pay, and the place of delivery.  After receiving this Purchase Order, VLM would determine whether it could fill the order.  Assuming it could, VLM sent ITC a Consolidated Sales Confirmation via email that confirmed the product to be shipped, the price, and the shipping terms.  After ITC agreed to

these terms, VLM would ship the produce pursuant to the delivery
schedule stated in the Purchase Order and confirmed in the
Consolidated Sales Confirmation. Immediately after shipping the
produce, VLM sent an invoice to ITC. The invoice listed the
quantity and description of the produce shipped, the price, the
delivery location and date, and the aforementioned provision
regarding attorneys' fees.

From June 26, 2012 through July 27, 2012, VLM and ITC engaged
in nine separate transactions pursuant to the steps described
above. In all nine of these transactions, ITC received an invoice
(which included the attorneys' fee provision at issue) and paid the
invoice in its entirety.

However, from July 31, 2012 through September 24, 2012, the
parties had nine additional transactions where ITC failed to pay
VLM. It is undisputed that ITC received an invoice for all
transactions - paid or unpaid - that included the attorneys' fee
provision.

While TAB Bank attempted to adduce an offer of proof that
challenged the validity of VLM's PACA license, the Court denied
this offer. The Court finds the copy VLM's PACA license and the
testimony from VLM Vice President Witold Filemonowicz persuasive in
determining that VLM has had a valid PACA license since July 2001.
See ECF No. 54-1; Ct. Tr. 2/19/13 at 62-64. Thus, the Court finds

- 8 -

VLM and ITC had valid PACA licenses at all relevant times in this dispute.

## 2.  *Conclusions of Law*

### a.  *United Nations Convention on Contracts for the International Sales of Goods*

The ITC Defendants argue that the United Nations Convention on Contracts for the International Sales of Goods (the "CISG") governs this case because VLM has an office in Montreal, Canada.  The ITC Defendants argue that since the CISG controls, the attorneys' fee provision on VLM's invoices is unenforceable.

The CISG became effective in the United States on January 1, 1988.  *See* 15 U.S.C.A. App. at 332 (1998).  Its purpose is "establishing substantive provisions of law to govern the formation of international sales contracts and the rights and obligations of the buyer and seller*." Usinor Industeel v. Leeco Steel Products, Inc.*, 209 F.Supp.2d 880, 884 (N.D. Ill. 2002).  It applies to "contracts of sale of goods between parties whose places of business are in different [nation] States . . . when the [nation] States are Contracting States."  *Id.* citing 15 U.S.C.A.App. Art. 1(a).  As the courts in this Circuit have noted, "federal case law interpreting and applying the CISG is scant." *Ajax Tool Works, Inc. v. Can-Eng Mfg. Ltd.*, No. 01-C-5938, 2003 WL 223187 at *2 (N.D. Ill. Jan. 30, 2003).  Because of this, this Court is

authorized to interpret the CISG in accordance with its general principles. *See Usinor Industeel*, 209 F.Supp.2d at 884.

The ITC Defendants argue that the CISG governs the transactions at issue because VLM Vice President Witold Filemonowicz testified that "the communications concerning the transaction[s] at issue . . . [were] done out of the Montreal office [and] the invoices were sent by the Montreal office." Defs.' Trial Brief at 5. The Court does not find this evidence sufficient to conclude that the CISG trumps the Uniform Commercial Code (the "UCC") and PACA.

In *Food Team International, Ltd. v. Unilink, LLC, et al.*, a case factually similar to the one at bar, the defendant argued that the CISG applied to the plaintiff's PACA claims, and specifically applied to an attorneys' fee provision because the produce that the plaintiff shipped was from China and the contracts were negotiated by one of plaintiff's agents in China. *Food Team International, Ltd. v. Unilink, LLC, et al.*, 872 F.Supp.2d 405, 414 (E.D. Penn. May 18, 2012). In rejecting this proposition, the court noted that the "defendant failed to provide an explanation of how those facts mandate[d] the application of the CISG and the displacement of the PACA and UCC Article 2." *Id.*

The Court finds the same is true here. First, Defendants provide only one case to support their argument, *Hanwha Corp. v. Cedar Petrochemicals, Inc.*, 760 F.Supp.2d 426 (S.D.N.Y. 2011).

Unlike *Food Team*, *Hanwha* did not involve PACA claims and instead
addressed the issue of whether the language in the parties'
contract had effectively caused them to opt-out of the CISG. *Id.*
at 430. Moreover, in *Hanwha*, the plaintiff was a Korean
corporation and there was no discussion whether Hanwha even had an
office in the United States. *Id.* at 428-431.

In this case, it is undeniable that the VLM has an office in
Canada. *See* Amend. Compl. at 1. However, VLM's PACA license
expressly provides a business address in Jersey City, New Jersey.
*See* ECF No. 54-1. The Court finds this evidence persuasive in
determining that VLM has "a place of business" in the United
States, and was "contracting" in the United States for the
transactions at issue. *See* 15 U.S.C.A.App. Art. 1(a). The Court
rejects Defendants' argument that the place of negotiations and the
place where the invoices were sent are dispositive. Thus, the
Court concludes PACA and the UCC control.

b. *The UCC and the Attorneys' Fees
and Interest Provision*

The ITC Defendants argue in the alternative that even if the
UCC applies, the attorneys' fees and interest provision in VLM's
invoices is unenforceable because this provision was an additional
term added to the contract between the parties. Defendants cite a
bankruptcy case, *G&G Peppers, LLC v. Ebro Foods, Inc.*, as support.

- 11 -

*G&G Peppers, LLC v. Ebro Foods, Inc.*, 424 B.R. 420 (Bankr. N.D. Ill. 2010).

Prior to analyzing the aforementioned case, the Court points out that this case was reversed nearly two years ago.  In fact, the portion of the case that was reversed by the district court was the bankruptcy court's finding denying attorneys' fees.  *See G&G Peppers v. Ebro Foods*, 449 B.R. 759, 767 (N.D. Ill. 2011) (stating that the "bankruptcy court's decision that G&G failed to preserve its PACA trust is affirmed, while its decision denying G&G's request for attorney fees is reversed and remanded for determination of a reasonable attorney fee award.").  Thus, the Court finds Defendants' reliance on this case entirely inappropriate.  Indeed, careless submissions of this kind tip-toe around the line of Rule 11.  In this instance, the Court will give Defendants the benefit of the doubt and assume that the relatively short deadline to submit a trial brief caused their less than thorough inquiry.

Setting aside this error, the Court addresses briefly the merits of Defendants' argument.  In *Brutyn, N.V. v. Anthony Gagliano Co., Inc. et al.*, a district court addressed the issue of whether an attorneys' fees and interest provision on an invoice was enforceable in a plaintiff's PACA claim.  *Brutyn, N.V. v. Anthony Gagliano Co., Inc. et al.*, No. 04-C-527, 2007 U.S. Dist. LEXIS

48008 (E.D. Wis. July 2, 2007).  In finding it was, the court
noted:

> I am satisfied that reasonable attorney's fees
> and interest should be awarded to Brutyn
> [plaintiff].  This is because the attorney's
> fees language appeared on each and every
> transaction, and at no point during the time
> in which the parties were doing business did
> AGCI [defendant] object to such term.  Based
> upon AGCI's failure to object to the inclusion
> of the term, AGCI accepted such term.

*Id.* at *56.

The Court finds the same is true here.  At the hearing,
Defendants presented testimony from ITC's former bookkeeper.  On
cross-examination, she testified that she received the invoices
from VLM and noticed the fee provision on each and every invoice
VLM sent to ITC.  She also admitted that she never objected to the
provision and was unaware of anyone else from VLM who did.  Ct.
Tr. 2/19/13 at 129-130.  Similarly, Mr. Oberman testified that he
did not object to the provision.  Thus, the Court concludes that
the ITC Defendants "accepted the risk that if there was a dispute
concerning the amount owed" and they were held liable, they would
incur the reasonable attorney's fees.  *Brutyn, N.V.*, 2007 U.S.
Dist. LEXIS 48008 at *57.

Additional support lies in the PACA statute itself.  PACA
permits the recovery of attorneys' fees and interest where the
parties have contemplated for such terms.  Indeed, if Congress
intended to limit PACA claims solely to the price of commodities,

- 13 -

it could have included language reflecting that limitation in 7 U.S.C. §499e(c)(2).  Instead, a fair reading of the statute permits attorneys' fees and interest which are contractually due within the scope of the statute's protection of "full payment owing in connection with the transaction."  7 U.S.C. § 499e(c)(2).

Finally, the Court rejects Defendants' argument that the attorneys' fee provision is unenforceable because it added a material term to the parties' established contract.  Instead, the Court concludes that VLM's practice of including this provision on its invoices is standard practice in the produce supplier industry.  Because of this conclusion, the ITC Defendants cannot claim that such a provision was a material alteration that caused an unreasonable surprise.

The Court finds support for such a conclusion in Section 2-207 of the UCC.  In relevant part, Section 2-207 provides:

> [A]dditional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) the offer expressly limits accepts to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

810 ILCS 5/2-207.

In this case, the parties are merchants who engage in the sale of produce.  Furthermore, the Court has already concluded that

Defendants failed to object to ITC about the provision.  Thus, the only issue is whether the fee provision is a material alteration.

"In Illinois the test for whether an additional term would be a material alteration to the contract is whether the addition constitutes unreasonable surprise to one of the bargaining parties." *Jada Toys, Inc. v. Chicago Import*, No. 07-C-699, 2009 WL 3055370 at *8 (N.D. Ill. Sept. 18, 2009.).  In light of the testimony provided by Mr. Oberman regarding the number of invoices ITC received from other suppliers with similar fee provision language on invoices and the testimony from Mr. Filemonowicz regarding his experience that such practice is standard in the industry, the Court concludes that Defendants cannot claim that this provision was an unreasonable surprise. *See* Ct. Tr. 2/19/13 at 42-48, 75-76.  Thus, the Court finds the attorneys' fees and interest provision enforceable.

### B.  Mr. Oberman's Personal Liability

VLM argues that the Court should find Mr. Oberman personally liable for the PACA claims.  After the ITC Defendants obtained new counsel, this Court vacated the default judgment only against Mr. Oberman personally.  Thus, a liability issue remains only with respect to him.

### 1.  *Findings of Fact*

It is undisputed that Lawrence Oberman was the President of ITC at the time of the transactions at issue. *See* Defs.' Trial

Brief at 2; *see also* Ct. Tr. 2/19/13 at 20.   Furthermore, the ITC
Defendants admitted that Mr. Oberman is an officer, director, or
person in a position to control ITC.   *See* ECF No. 58 at 2.   Based
on ITC's admissions and Oberman's testimony, the Court also finds
Oberman had the authority to direct payments from ITC's PACA trust
assets and was the person in charge of determining which suppliers
got paid and which did not.   *See* Ct. Tr. 2/19/13 at 139.

### 2.  *Conclusions of Law*

The Court concludes that Mr. Oberman is personally liable
under PACA.   In determining whether an individual is personally
liable the Court must determine:   "(1) whether an individual's
involvement with the company was sufficient to establish a legal
responsibility; and (2) whether the individual breached a fiduciary
duty to the PACA creditors."   *Sato & Co., LLC v. S & M Produce,*
*Inc.*, 859 F.Supp.2d 923, 927-28 (N.D. Ill. 2012).

In analyzing an individual's involvement in a corporation,
courts examine a variety of factors.   *Id.*   Such factors include
whether an individual (a) was a director of the corporation; (b)
had a role in causing a breach of trust; (c) had control of the
day-to-day operations; (d) was active in the management of the
company; and (e) signed for company accounts.   *Id.*   Based on the
previously stated findings of fact regarding Mr. Oberman's role at
ITC, the Court concludes his involvement is sufficient to establish
legal responsibility.

- 16 -

In determining whether an individual breached a fiduciary duty under PACA, courts have routinely held that paying other creditors and dissipating assets of PACA trust funds constitutes a breach. *See, Anthony Marano Co. v. MS-Grand Bridgeview, Inc.*, No. 08 C 4244, 2010 WL 5419057 (N.D. Ill. Dec. 23, 2010).   Indeed, the federal regulations define "dissipation" of trust assets as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid [sellers] to recover money owed in connection with produce transactions."  7 C.F.R. 46.46(a)(2).

VLM adduced evidence of ITC's accounts payable.  Such evidence revealed that Mr. Oberman paid a phone bill and three other creditors after the TRO was entered.  *See* Ct. Tr. 2/19/13 at 37; *see also* Pl.'s Ex. 9 at 1.   The payment of ordinary business expenses constitutes a violation of fiduciary duties to unpaid PACA creditors. *Anthony Marano Co.*, 2010 WL 5419057 at *8.   Thus, the Court concludes Oberman breached his fiduciary duty and is personally liable for VLM's PACA claims.

### C.   Count V

Count V of VLM's Complaint alleges that TAB Bank is liable for the unlawful conversion and retention of PACA trust assets.   As previously mentioned, TAB Bank denied all allegations that it took possession or control over ITC's assets.   At the hearing, VLM failed to present any evidence or testimony to refute TAB Bank's

denial.    Additionally, VLM has not presented any arguments
regarding TAB Bank's liability in its post-hearing brief.    Thus,
the Court cannot make any findings of fact or conclusions at law
with respect to this claim.    Accordingly, the Court finds in favor
of TAB Bank with respect to Count V.

## IV.   <u>CONCLUSION</u>

For the reasons stated herein, the Court finds for VLM on
Counts I-IV of the Complaint, and awards VLM the sum of $200,672.88
plus attorneys' fees and any other interest which has accrued since
February 19, 2013.    The Court finds in favor of TAB Bank with
respect to Count V.    The Court directs VLM to submit its fee
petition by April 1, 2013.    Defendants are permitted until
April 29, 2013 to file a response challenging the reasonableness of
VLM's fees.    If VLM chooses, it will have until May 6, 2013 to file
a reply.


**IT IS SO ORDERED.**



_____
      Harry D. Leinenweber, Judge
      United States District Court

Date:3/5/2013


- 18 -